**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Michael J. Capozzoli and Lee Napier, | : | Civil Action |
| | : | |
| Plaintiffs | : | No. |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| Cumulus Media Holdings, Inc., Westwood One, LLC, TM Studios, Inc., William G. Clancy, and Kirk Stirland, | : : : | |
| | : | |
| Defendants | : | |

## COMPLAINT

### Introduction

Plaintiffs Michael J. Capozzoli and Lee Napier, by their undersigned counsel, bring this action pursuant to the law cited herein against Cumulus Media Holdings, Inc., Westwood One, LLC, TM Studios, Inc., William G. Clancy, and Kirk Stirland seeking relief from the unlawful employment discrimination and retaliation committed by Defendants.

### Jurisdiction And Venue

1.     This Court has original jurisdiction to hear this action and adjudicate the claims herein pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"). The supplemental jurisdiction of this Court is invoked with regard to Plaintiffs' New Jersey Law Against Discrimination ("NJLAD") claims.

2.     All jurisdictional prerequisites to bringing this action have been satisfied because:

(a)     On July 31, 2019, both Plaintiff Capozzoli and Plaintiff Napier filed timely complaints with the Equal Employment Opportunity Commission ("EEOC").

(b)     On January 24, 2020, the EEOC issued a Right to Sue Notice to Plaintiff Capozzoli. A true and correct copy of the January 24, 2020 Right to Sue Notice is attached hereto as Exhibit "A".

(c)     On January 24, 2020, the EEOC issued a Right to Sue Notice to Plaintiff Napier. A true and correct copy of the January 24, 2020 Right to Sue Notice is attached hereto as Exhibit "B".

(d)     On February 4, 2020, the EEOC issued a Right to Sue Notice to Plaintiff Napier. A true and correct copy of the February 4, 2020 Right to Sue Notice is attached hereto as Exhibit "C".

3.     Venue is appropriate in the District of New Jersey because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendants are subject to this District's personal jurisdiction with respect to this action.

### The Parties

4.     Plaintiff Capozzoli is fifty-eight (58) years old.

5.     Plaintiff Capozzoli is a citizen and resident of the United States. Plaintiff Capozzoli resides in Burlington, New Jersey.

6.     Plaintiff Napier is sixty-six (66) years old.

7.     Plaintiff Napier is a citizen and resident of the United States. Plaintiff Napier resides in Bluffton, South Carolina.

8.     Defendant Cumulus Media, Inc. ("Cumulus Media") is a Delaware corporation with its corporate headquarters located at 3280 Peachtree Road, NW, Suite 2200, Atlanta, Georgia 30305.

9.      According to Cumulus Media's website:

CUMULUS MEDIA provides advertisers with personal connections, local impact and national reach through on-air and on-demand digital, mobile, social, and voice-activated platforms, as well integrated digital marketing services, powerful influencers, full-service audio solutions, industry-leading research and insights, and live event experiences.

*See* https://www.cumulusmedia.com/ (accessed April 10, 2020).

10.     Cumulus Media employs over five thousand employees throughout the United States.

11.     Cumulus Media is an employer as defined in the ADEA and the NJLAD.

12.     Defendant Westwood One, LLC ("Westwood One") is a Delaware corporation with its corporate headquarters located at 220 W. 42nd Street, New York, NY 10036.

13.     According to Westwood One's website:

Westwood One, the national-facing arm of CUMULUS MEDIA, offers iconic, nationally syndicated sports, news and entertainment content to over 250 million monthly listeners across an audio network of 8,000 affiliated broadcast radio stations and media partners. Westwood One is the largest audio network in America, home to premium content that defines the culture, including the NFL, the NCAA, the Masters, the Olympics, Westwood One Backstage, and the Academy of Country Music Awards. The rapidly growing Westwood One Podcast Network delivers popular network and industry personalities and programs. Westwood One connects listeners with their passions through programs and platforms that have everyone listening.

*See* https://www.westwoodone.com/ (accessed April 10, 2020).

14.     Westwood One employs over five hundred employees throughout the United States.

15.     Westwood One is an employer as defined in the ADEA and the NJLAD.

16.     TM Studios, Inc. ("TM Studios") is a Delaware corporation with its corporate headquarters located at 2002 Academy Ln #110, Farmers Branch, TX 75234.

17.     According to Westwood One's website:

TM Studios, Inc. creates, produces and distributes music-based products and services for broadcast media use. TM Studios' clients include radio and television stations, satellite and Internet networks, websites, the Armed Forces Radio Network, and numerous advertising agencies and commercial businesses.

*See* https://www.westwoodone.com/programming/jingles-imaging/tm-studios/

(accessed April 15, 2020).

18.     TM Studios employs approximately twenty (20) employees throughout the United States.

19.     TM Studios is an employer as defined in the ADEA and the NJLAD.

20.     At all relevant times, Cumulus Media, Westwood Media, and TM Studios were joint or co-employers of Plaintiffs because they supervised and controlled Plaintiffs' work schedules or conditions of employment to a substantial degree, determined Plaintiffs' rate and method of payment, and maintained Plaintiffs' employment records. For example:

(a)     At all relevant times, Plaintiffs' employment was subject to Cumulus Media's employment policies.

(b)     At all relevant times, Plaintiffs' paychecks came from Cumulus Media.

(c)     At all relevant times, Westwood One determined Plaintiffs' base pay, commissions, and bonus plans.

(d)     At all relevant times, Cumulus and Westwood One maintained Plaintiffs' employment files and records.

(e)     At all relevant times, Plaintiffs' supervisors worked for Cumulus Media, Westwood One, and/or TM Studios.

21.     Defendant William G. Clancy a/k/a/ Greg Clancy ("Clancy") is an adult male individual residing at 4421 Villa Drive, Flower Mound, Texas 75028.

22.     At all relevant times, Clancy was TM Studios' General Manager, Vice President, and Creative Director.

23.     Defendant Kirk Stirland ("Stirland") is an adult male individual residing at 1041 Lamont Norwood Rd Pittsboro, North Carolina 27312.

24.     At all relevant times, Stirland was Westwood One's President of Programming.

## Factual Background

### Plaintiff Capozzoli's Employment With Defendants

25.     On May 10, 2010, Plaintiff Capozzoli began working for Dial Global Radio Networks.

26.     In or about 2014 or 2015, Cumulus Media acquired Dial Global Radio Networks.

27.     At that time, Dial Global Radio Networks became part of Westwood One, which is owned by Cumulus Media.

28.     At that time, Plaintiff Capozzoli became an employee of Cumulus Media.

29.     At all relevant times, Plaintiff worked in Cumulus Media's Westwood One division and was assigned to the TM Studios group.

30.     During Plaintiff Capozzoli's employment with Defendants, his job title was Affiliate Sales.

31.     Plaintiff Capozzoli was and is qualified for the position of Affiliate Sales based on his prior work experience, which includes approximately eighteen (18) years of industry experience.

32.     Further, all relevant times, Plaintiff Capozzoli met or exceeded Defendants' reasonable expectations for the position of Affiliate Sales.

33.     At all relevant times, Plaintiff Capozzoli worked out of his home in Burlington, New Jersey.

34.     At all relevant times, Plaintiff Capozzoli was one of the oldest employees within Defendants' sales division.

35.     Beginning in 2016, Defendants began subjecting Plaintiff Capozzoli to discrimination based on his age. For example:

(a)     Stirland frequently referred to the sales division of TM Studios as "old and stodgy," "long in the tooth," and "culturally out of sync."

(b)     Stirland also stated that he wanted to reinvent TM Studios to attract a younger demographic by hiring younger employees in the sales division. Stirland became obsessed with hiring young sales employees who he perceived to be "hip" and compared Defendants' sales employees with those of a competitor (Reel World) that employed younger individuals.

(c)     Defendants compensated younger individuals in Defendants' sales department at a greater base salary than more tenured sales employees, including Plaintiff Capozzoli.

(d)     Defendants restructured Plaintiff Capozzoli's bonus and commission plan, resulting in a significant decrease in Plaintiff Capozzoli's compensation. Defendants, however, simultaneously restructured the bonus and compensation plans of significantly younger sales employees to ensure that their compensation increased.

36.     In or about December 2017, Clancy telephoned Plaintiff Capozzoli to discuss Plaintiff Napier's performance. Plaintiff Napier was approximately sixty-five (65) years old at the time.

37.     During this conversation, Clancy referred to Plaintiff Napier as an "old musician looking for a gig" and requested that Plaintiff Capozzoli participate in a disciplinary conference against Plaintiff Napier.

38.     In response to Clancy's request, Plaintiff Capozzoli asked if his employment was in jeopardy, to which Clancy responded in the negative.

39.     Plaintiff Capozzoli also told Clancy that he did not wish to be involved in any disciplinary conference and that Plaintiff Capozzoli was aware that Plaintiff Napier was meeting his sales goals.

40.     At that time, Plaintiff Capozzoli was aware that Plaintiff Napier had made an age discrimination allegation to Defendants.

41.     From about December 2017 until about November 2018, Plaintiff Capozzoli had approximately three telephone calls with Debbie Westover, Defendant's Contract Manager.

42.     During these calls, Plaintiff Capozzoli told Ms. Westover that he and Plaintiff Napier thought Defendants were discriminating against Plaintiff Napier because of his age, that Defendants were accusing Plaintiff Napier of not making his numbers, that he had referred Plaintiff Napier to an employment discrimination attorney, and that Plaintiff Napier had made a written complaint of age discrimination to Defendants' Human Resources department and to in-house counsel.

43.     Ms. Westover regularly stated to Plaintiff Capozzoli that "nobody sends in more deals than you guys," meaning Plaintiff Capozzoli and Plaintiff Napier.

44.     Beginning in about December 2017, Defendants began retaliating against Plaintiff Capozzoli for opposing age discrimination in the workplace. For example:

    (a)     Throughout the remainder of Plaintiff Capozzoli's employment with Defendants, Stirland and Clancy reiterated their interest in assembling a more "hip" sales force by eliminating older employees in favor of younger sales employees.

    (b)     Stirland and Clancy began micromanaging Plaintiff Capozzoli's work and sales and refusing to communicate with Plaintiff Capozzoli.

45.     On November 15, 2018, Defendants terminated Plaintiff Capozzoli's employment, allegedly as part of a "reduction in force."

46.     Upon information and belief, Defendants have replaced Plaintiff Capozzoli with significantly younger individuals.

**Plaintiff Napier's Employment With Defendants**

47.     On August 1, 2013, Defendant hired Plaintiff Napier in the position of Regional Manager for Affiliate Relations.

48.     Plaintiff Napier was the oldest employee in Defendants' sales division.

49.     Plaintiff Napier was well qualified for his position and performed well.

50.     In or around June 2016, Defendant offered Plaintiff Napier a transfer to TM Studios, the jingle and production music division of Defendants.

51.     Plaintiff Napier remained in the same position as Regional Manager for Affiliate Relations.

52.     With Plaintiff Napier's transfer, he began to directly report to Clancy and Stirland.

53.     In or around July 2016, Plaintiff Napier attended a meeting at the TM Studios headquarters in Dallas, Texas with Clancy, Stirland and Plaintiff Capozzoli.

54.     During this meeting, Stirland commented that TM Studios had a reputation for being "old and stodgy."

55.     Stirland continued to state that he wanted to reinvent TM Studios by hiring younger employees in the sales department in order to attract younger customers.

56.     Plaintiff Napier was shocked by Stirland's ageist comments.

57.     Plaintiff Napier continued to perform well and regularly exceeded his sales goals.

58.     In or around late 2017, Defendants began to subject Plaintiff Napier to age discrimination.

59.     In or around October 2017, Clancy began to overly scrutinize Plaintiff Napier's work product, including, but not limited to, criticizing Plaintiff Napier's sales regarding Defendants' new EVO product, despite Plaintiff Napier's sales being comparable with his coworkers.

60.     On or around December 7, 2017, Clancy placed Plaintiff Napier on a Performance Improvement Plan ("PIP") for allegedly failing to his meet his sales goals with regards to the EVO product and gave him thirty (30) days to improve his sales of this product.

61.     At the time, Plaintiff Napier was exceeding his overall sales goals.

62.     Upon information and belief, Plaintiff Napier was the only individual placed on a PIP in Defendants' sales division due to EVO product sales goal.

63.     On or around December 21, 2017, Plaintiff Napier took part in a telephone conference with Clancy and Melissa Garza, Corporate Counsel, regarding his performance.

64.     During this conference call, Clancy and Ms. Garza proceeded to unjustly criticize Plaintiff Napier's job performance, despite the fact that Plaintiff Napier had received bonuses for exceeding his sales goals three (3) quarters in a row.

65.     Plaintiff Napier responded by defending his performance and stating that he believed Defendants' unjust criticism of his performance was being used to terminate Plaintiff Napier's employment.

66.     In or around early January 2018, Plaintiff Capozzoli informed Plaintiff Napier that Clancy had referred to Plaintiff Napier as an "old musician looking for a gig."

67.     On or around January 5, 2018, Plaintiff Napier filed a formal complaint of age discrimination with Ms. Garza and Todd McCarthy, Chief Human Resources Operator.

68.     Ms. Garza and Mr. McCarthy responded to Plaintiff Napier's complaint of age discrimination with disbelief.

69.     Upon information and belief, Ms. Garza and Mr. McCarthy failed to conduct an investigation or address Plaintiff Napier's complaint in any way.

70.     On or around February 2, 2018, Plaintiff Napier took part in a conference call with Clancy, Ms. Garza, and Stirland to discuss his performance.

71.     During this call, Clancy, Ms. Garza and Stirland demanded that Plaintiff Napier provide a list of his daily sales calls and interrogated him about his sales pitch.

72.     In addition, they accused Plaintiff Napier of being "set in [his] ways."

73.     Plaintiff Napier was then given an unjustifiable written discipline for alleged performance deficiencies.

74.     The warning also stated that Defendants could terminate Plaintiff Napier's employment at any time.

75.     This conference call and written discipline was in retaliation for Plaintiff Napier's complaint of age discrimination.

76.     On or around March 9, 2018, Plaintiff Napier took part in a conference call with Clancy, Ms. Garza, and Stirland in which Plaintiff Napier's performance was unfairly criticized.

77.     On April 13, 2018, Plaintiff Napier again took part in a conference call with Clancy, Ms. Garza, and Stirland in which Plaintiff Napier's performance was unfairly criticized.

78.     However, Plaintiff Napier continued to meet his sales goals for both the second and third quarters of 2018.

79.     On or around November 15, 2018, Defendants terminated Plaintiff Napier's employment, allegedly due to a "change in strategy and direction."

80.     Defendants proceeded to replace Plaintiff Napier with a significantly younger, less experienced, and less qualified individual.

**Count I**
**Violation of the ADEA – Age Discrimination**
**Plaintiffs Capozzoli and Napier vs.**
**<u>Defendants Cumulus Media, Westwood One, and TM Studios</u>**

81.     Plaintiffs incorporate by reference paragraphs 1 through 80 as though the same were set forth at length herein.

82.     As averred above, Plaintiff Capozzoli is fifty-eight (58) years old.

83.     As averred above, Plaintiff Napier is sixty-six (66) years old.

84.     As averred above, Plaintiff Capozzoli was and is qualified for the position of Affiliate Sales position.

85.     As averred above, Plaintiff Napier was and is qualified for the Regional Manager for Affiliate Relations position.

86.     As averred above, Defendants terminated Plaintiffs' employment.

87.     As averred above, Defendants hired significantly younger individuals to replace Plaintiffs.

88.     Defendants terminated Plaintiffs' employment because of their ages.

89.     Plaintiffs' ages were a determinative factor in Defendants' decision to terminate Plaintiffs' employment.

90.     Defendants knowingly and willfully discriminated against Plaintiffs on the basis of Plaintiffs' ages in violation of the ADEA.

91.     By reasons of Defendant's unlawful discrimination, Plaintiffs are entitled to all legal and equitable remedies available under the ADEA.

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)     Issue a Declaratory Judgment declaring that the discriminatory practices set forth herein are unlawful and in violation of the ADEA.

(b)      Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination or retaliation against Plaintiffs in violation of the ADEA and ordering Defendants to re-hire Plaintiffs upon such terms and conditions as will put Plaintiffs to the position Plaintiffs would have occupied had Defendants not unlawfully discriminated against Plaintiffs.

(c)      Enter judgment in favor of Plaintiffs, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by Plaintiffs.

(d)      Enter judgment in favor of Plaintiffs for front pay in lieu of hiring.

(e)      Enter judgment in favor of Plaintiffs for liquidated damages to the extent allowable by law for the willful violation of the ADEA.

(f)      Enter judgment in favor of Plaintiffs for any other monetary losses as a direct result of Defendant's violation of the ADEA.

(g)      Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by Plaintiffs.

(h)      Award Plaintiffs reasonable attorneys' fees together with the costs of this action.

**Count II**
**Violation of the ADEA – Age Discrimination**
**Plaintiffs Capozzoli and Napier vs.**
**Defendants Cumulus Media, Westwood One, and TM Studios**

92.      Plaintiffs incorporate by reference paragraphs 1 through 91 as though the same were set forth at length herein.

93.     As averred above, Plaintiff Capozzoli engaged in protected activity when he reported what he reasonably believed to be Defendants' age discrimination against Plaintiff Napier to Defendants.

94.     As averred above, Plaintiff Napier engaged in protected activity when he reported what he reasonably believed to be Defendants' age discrimination against himself to Defendants.

95.     As averred above, following Plaintiffs' protected activity, Defendants terminated Plaintiffs' employment.

96.     Defendants terminated Plaintiffs' employment because of their protected activity.

97.     Defendants knowingly and willfully retaliated against Plaintiffs in violation of the ADEA.

98.     By reasons of Defendant's unlawful retaliation, Plaintiffs are entitled to all legal and equitable remedies available under the ADEA.

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)     Issue a Declaratory Judgment declaring that the retaliatory practices set forth herein are unlawful and in violation of the ADEA.

(b)     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination or retaliation against Plaintiffs in violation of the ADEA and ordering Defendants to re-hire Plaintiffs upon such terms and conditions as will put Plaintiffs to the position Plaintiffs would have occupied had Defendants not unlawfully discriminated against Plaintiffs.

(c)     Enter judgment in favor of Plaintiffs, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by Plaintiffs.

(d)     Enter judgment in favor of Plaintiffs for front pay in lieu of hiring.

(e)     Enter judgment in favor of Plaintiffs for liquidated damages to the extent allowable by law for the willful violation of the ADEA.

(f)     Enter judgment in favor of Plaintiffs for any other monetary losses as a direct result of Defendant's violation of the ADEA.

(g)     Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by Plaintiffs.

(h)     Award Plaintiffs reasonable attorneys' fees together with the costs of this action.

**Count III**
**Violation of the NJLAD – Age Discrimination**
**<u>Plaintiffs Capozzoli and Napier vs. Defendants</u>**

99.     Plaintiffs incorporate by reference paragraphs 1 through 98 as though the same were set forth at length herein.

100.    As averred above, Plaintiff Capozzoli is fifty-eight (58) years old.

101.    As averred above, Plaintiff Napier is sixty-six (66) years old.

102.    In terminating Plaintiffs' employment, Defendants have discriminated against Plaintiffs on account of their ages in violation of the NJLAD.

103.    By engaging in the above-referenced conduct, Defendants violated Plaintiffs' right to be free of discrimination in violation of the NJLAD.

104.    Clancy and Stirland are individually liable under the NJLAD for aiding and abetting illegal discrimination.

105.    Upon information and belief, Clancy and Stirland made the decision to wrongfully terminate Plaintiffs' employment.

106.    Upon information and belief, Clancy and Stirland were generally aware of their roles as part of an overall illegal activity at the time that they provided the assistance in terminating Plaintiffs' employment.

107.    Upon information and belief, Clancy and Stirland knowingly and substantially assisted in making the decision to wrongfully terminate Plaintiffs' employment.

108.    As a direct and proximate result of Defendants' violations of the NJLAD, Plaintiffs have suffered a loss of wages and benefits and emotional distress damages.

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)    Issue a Declaratory Judgment declaring that the discriminatory practices set forth herein are unlawful and in violation of the NJLAD.

(b)    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination or retaliation against Plaintiffs in violation of the NJLAD and ordering Defendants to re-hire Plaintiffs upon such terms and conditions as will return Plaintiffs to the position Plaintiffs would have occupied had Defendants not unlawfully discriminated against Plaintiffs.

(c)    Enter judgment in favor of Plaintiffs, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by Plaintiffs.

(d)    Enter judgment in favor of Plaintiffs for front pay in lieu of hiring.

(e)    Enter judgment in favor of Plaintiffs for compensatory damages to the extent allowable by law under the NJLAD.

(f)    Enter judgment in favor of Plaintiffs for punitive damages to the extent allowable by law under the NJLAD.

(g)     Enter judgment in favor of Plaintiffs for any other monetary losses as a direct result of Defendants' violation of the NJLAD.

(h)     Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by Plaintiffs.

(i)     Award Plaintiffs reasonable attorneys' fees together with the costs of this action.

**Count IV**
**Violation of the NJLAD – Retaliation**
**Plaintiffs Capozzoli and Napier vs. All Defendants**

109.     Plaintiffs incorporate by reference paragraphs 1 through 108 as though the same were set forth at length herein.

110.     In terminating Plaintiffs' employment, Defendants retaliated against Plaintiffs for complaining to Defendants about age discrimination.

111.     Defendants' retaliation against Plaintiffs violates the NJLAD.

112.     Defendants Clancy and Stirland are individually liable under the NJLAD for retaliation against Plaintiffs.

113.     As a direct and proximate result of Defendants' violations of the NJLAD, Plaintiffs have suffered a loss of wages and benefits and emotional distress damages.

WHEREFORE, Plaintiffs respectfully request this Court to:

(a)     Issue a Declaratory Judgment declaring that the retaliatory practices set forth herein are unlawful and in violation of the NJLAD.

(b)     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination or retaliation against Plaintiffs in violation of the NJLAD and ordering Defendants to re-hire Plaintiffs upon such terms and conditions as will

return Plaintiffs to the position Plaintiffs would have occupied had Defendants not unlawfully discriminated against Plaintiffs.

(c)    Enter judgment in favor of Plaintiffs, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by Plaintiffs.

(d)    Enter judgment in favor of Plaintiffs for front pay in lieu of hiring.

(e)    Enter judgment in favor of Plaintiffs for compensatory damages to the extent allowable by law under the NJLAD.

(f)    Enter judgment in favor of Plaintiffs for punitive damages to the extent allowable by law under the NJLAD.

(g)    Enter judgment in favor of Plaintiffs for any other monetary losses as a direct result of Defendants' violation of the NJLAD.

(h)    Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by Plaintiffs.

(i)    Award Plaintiffs reasonable attorneys' fees together with the costs of this action.

## **Jury Demand**

Plaintiffs hereby demand a jury to try all claims triable by jury.

Respectfully submitted,

Dated: April 22, 2020

Stephanie J. Mensing
Mensing Law LLC
1635 Market Street, Suite 1600
Philadelphia, PA 19103
(215) 586-3751; (215) 359-2741 fax
stephanie@mensinglaw.com
Attorney for Plaintiff Michael J. Capozzoli

*/s/ David M. Koller*

David M. Koller
Koller Law LLC
2043 Locust St #1B
Philadelphia, PA 19103
(215) 545-8917; (215) 575-0826 fax
davidk@phillyhometownlawyer.com
Attorney for Plaintiff Lee Napier