UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL J. CAPOZZOLI and LEE NAPIER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CUMULUS MEDIA HOLDINGS, INC., WESTWOOD ONE, LLC, TM STUDIOS, INC., WILLIAM G. CLANCY, AND KIRK STIRLAND,<br><br>　　　　　Defendants. | Civil Action No. 1:20-cv-04992-RMB-AMD<br><br>Hon. Renee Marie Bumb, presiding<br>Hon. Ann Marie Donio, referral<br><br>RETURN DATE: November 8, 2021 |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Despite their arguments to the contrary, Plaintiffs have not set forth a *prima facie* case of discrimination or retaliation. They have not identified similarly situated, but substantially younger employees retained after the reduction in force. Nor can they establish the *prima facie* elements of their retaliation claims — protected conduct and a causal connection. Even if they could, Defendants have set forth a legitimate, nondiscriminatory and nonretaliatory reason for their terminations, which Plaintiffs cannot rebut.

**II.   LEGAL ARGUMENT**

　　**A.   Affiliate Sellers Outside TM Studios Are Not Similarly Situated To Plaintiffs.**

In their Brief in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Br."), Plaintiffs argue that they have met their *prima facie* case because Westwood One retained Affiliate Sellers outside of TM Studios who were substantially younger than Plaintiffs. (Pls.' Br., p. 7). However, these employees were not similarly situated to Plaintiffs, and their retention cannot

support Plaintiffs' *prima facie* case.

To be similarly situated, employees must be "similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 Fed. App'x. 220, 222–23 (3d Cir. 2009). The similarly situated analysis is not mechanistic, and instead requires a "fact-intensive" inquiry. *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d. Cir. 2004). Relevant factors include the employees' supervisors, department, and whether they had to meet the same standards. *See Bullock v. Children's Hosp. of Phila.*, 71 F. Supp. 2d 482, 487 (3d Cir. 1999); *Lepore v. Lanvision Sys., Inc.*, 113 Fed. App'x. 449, 452 (3d Cir. 2004) (opining that similarly situated employees "work in the same area in approximately the same position").

Plaintiffs were Affiliate Sellers in TM Studios, which was a division within Westwood One's business line. (Defendants' Statement of Undisputed Material Facts ("DSUMF") 2). They reported to Greg Clancy, who "ran" TM Studios. (DSUMF 2; Plaintiff's Counterstatement of Material Facts ("PCMF"), Ex. 1, 99:3-5). As of 2017, TM Studios Affiliate Sellers sold a TM Studios product called EVO, marketed exclusively through TM Studios. (DSUMF 2). TM Studios Affiliate Sellers were expected to meet specific sales goals related to the EVO product line, and these goals did not apply to Affiliate Sellers in other divisions of Westwood One. (DSUMF 52-54, 61). Other Westwood One Affiliate Sellers in different divisions (ex. news talk, sports, country music) sold different products, not EVO or other TM Studios products. (PCMF, Ex. 3, 247:13-24).

The reduction in force was limited to TM Studios, and six positions within TM Studios were eliminated, including all Affiliate Seller positions. (DSUMF 114-116; PCMF, Ex. 21, p. 8). No positions outside of TM Studios were eliminated. (PCMF, Ex. 21, p. 8).

The employees identified by Plaintiffs as being "similarly situated" include a "Sr. Director,

Sports Affiliate Sales[,]" "Regional Manager 24/7 Formats[,]" and an "Affiliate Marketing Coordinator[.]" (PCMF, Ex 21). These employees were not part of TM Studios, did not sell TM Studio products, did not report to Mr. Clancy, and cannot be similarly situated. *See Jackson v. Trump Entm't Resorts, Inc.*, 149 F. Supp. 3d 502, 511 (D.N.J. 2015) (limiting similarly situated analysis in a RIF case to employees in the same position within the same sub-department).

Additionally, the average age of all TM Studios employees following the reduction in force does not support Plaintiffs' *prima facie* case. The inquiry is whether similarly situated employees were retained. Because Plaintiffs have identified no substantially younger, similarly situated employees retained, they have not established a *prima facie* case of age discrimination.

### B. The Comments Identified (And Mischaracterized) By Plaintiffs Are Stray Remarks Unrelated To The Decision-Making Process.

Plaintiffs claim that alleged remarks by Mr. Clancy and Kirk Stirland are evidence of age-based animus (Pls.' Br., p. 10); however, the identified (and mischaracterized) comments are stray remarks because (1) they were made in the context of discussing TM Studios new product, EVO; or (2) they were made at least eleven months before the reduction in force; and (3) they were unconnected to decision-making process.

To determine if a statement is probative of discriminatory intent or merely a stray remark, courts consider whether the statement was related to the decision-making process at-issue, "the temporal proximity of the statement to the adverse employment decision[,]" and "the purpose and content of the statement." *Parker v. Verizon Pa., Inc.*, 309 Fed. App'x 551, 558-59 (3d Cir. 2009). Third Circuit has repeatedly held that comments made months before the alleged adverse employment action unrelated to the decision-making process are stray remarks even if they were made by decision-makers or supervisors. *See Hyland v. Am. Intern. Group*, 360 F. App'x 365, 367 (3d Cir. 2010) (holding that statement by decisionmaker that plaintiff was the "old man" of

3

the operation was a stray remark); *Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241-42 (3d Cir. 2011) (statements that "you are ready to retire"; "[y]ou have gray hair"; wanting a "younger workforce" and "new blood" were stray remarks); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111-12 (3d Cir. 1997) (holding statement "[i]f you are getting too old for the job, maybe you should hire one or two young bankers" was a stray remark).

Regarding the alleged "old and stodgy" and "long in the tooth" comments by Mr. Stirland, Plaintiffs mischaracterize the record, stating that "Mr. Stirland continued to reiterate that Mr. Capozzoli and Mr. Napier were old and stodgy and long in the tooth" and Mr. Stirland specifically "called" Plaintiffs old and stodgy. (PCMF 66, 69). However, at his deposition, Mr. Capozzoli acknowledged that during these conversations, Mr. Stirland was discussing the perception of TM Studios in connection with the release of its new EVO product. (DSUMF 71). Mr. Capozzoli testified that Mr. Stirland stated:

> A: . . . You guys have a serious perception problem. **TM is old and stodgy and long in the tooth.** Have a serious perception problem. You are out of sync.
>
> (PCMF Ex. 1, 121:5-14).

Mr. Capozzoli could not testify with certainty regarding whether Mr. Stirland's comments were directed at him or TM Studios' products. (DSUMF 69).

Mr. Napier recognized that Mr. Stirland was talking about TM Studios' reputation when he used the terms "old" and "stodgy" or referenced wanting a "hipness youth factor." (PCMG 69; DSUMF 68). These comments were made during conversations where Mr. Stirland was discussing the new EVO product line, which was specifically being developed to replace "old" products. (DSUMF 71). In light of the context, these comments do not show age-based animus by Mr. Stirland. Additionally, these comments were unconnected to the reorganization decision and were

4

made, at a minimum, eleven months before their termination.

Similarly, Mr. Clancy's alleged comment that Mr. Napier was "an old musician looking for a gig" can only be viewed as a stray remark because it was made over eleven months before the termination and had no connection to the reorganization. As a result, these comments do not support Plaintiffs' discrimination claims.

### C. Mr. Capozzoli's Affidavit Is A Sham Affidavit.

Under the sham affidavit doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller, Inc.,* 503 F. 3d 247, 251 (3d Cir. 2007). Such affidavits "cannot raise a genuine issue of fact because it is merely a variance from earlier deposition testimony, and therefore no reasonable jury could rely on it to find for the nonmoving [party]." *Id.* at 253. Thus, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Id.*

In his affidavit, in an attempt to create a genuine issue of material fact, Mr. Capozzoli affirms that he has managerial or supervisory experience, including at Premiere Radio Networks/Clear Channel. (PCMF, Ex. 18, ¶ 5).[1] During his deposition, Mr. Capozzoli was specifically asked about his job history, and more specifically, about his responsibilities at Premiere Radio Networks. He stated, "I basically held the same position that I did with Cumulus[,] TM [Studios], Westwood, . . . I sold jingle and production and imaging services to radio stations." (PCMF, Ex. 18, ¶ 5). He did not mention managerial-level responsibilities, nor

---

[1] Even if this affidavit is considered, there is no evidence Mr. Clancy was aware of this experience.

5

did his position at Westwood One include managerial responsibilities.

Mr. Capozzoli also attempts to create a genuine issue of material fact regarding how the sale process worked in TM Studios before the reorganization. In his deposition, Mr. Capozzoli explained the sales process, stating that "[t]he first step [of the sales process] is to get [the client] to say "yes." [He completes] the agreement, and then you [do] what is called a creative call." (PCMF, Ex. 1, 37:23-38:5). He described himself as "the guy between the station and the creative person." (PCMF, Ex. 1, 37:23-38:5). And after getting a "yes[,]" he would "set up a creative call" and put the creative professionals and the radio station representatives "on the same page." (PCMF, Ex. 1, 38:5-17). In his declaration, however, Mr. Capozzoli describes a different process wherein writers and producers would get direct calls from Production Directors at radio stations, make sales, and his only role was to generate the agreement. (PCMF, Ex. 18).

Mr. Capozzoli's affidavit impermissibly conflicts with his sworn deposition testimony, is only offered to defeat summary judgment, and should be afforded no evidentiary weight.

**D.  Hiring Chris Stevens Is Not Evidence Of Pretext.**

Plaintiffs assert that hiring Chris Stevens to be the Vice President of Affiliate Sales is evidence of pretext (Pls.' Br., p. 18). However, Mr. Clancy undisputedly wanted someone for the position located in Dallas, Texas, which is where TM Studios was located, to support him in the office. (PCMF, Ex. 1, 37:23-38:2; Ex., 3, 16:17-18, 234:10-18, 275:10-12; Ex. 5, 74:2-5). Mr. Stevens was in Texas; Mr. Capozzoli was not. That Mr. Clancy did not ask Mr. Capozzoli to move halfway across the country for a position is not evidence of age-based animus.[2]

Additionally, Mr. Clancy testified that he wanted someone with "higher organization

---

[2] Mr. Capozzoli's argument is further belied by the fact that Mr. Capozzoli testified he limited his job search based on location, whether he could work from home, and that he was not interested in moving to, for example, South Carolina. (PCMF Ex. 1, 227:15-228:3).

6

skills" to manage the sales process, and he did not view Mr. Capozzoli as having that skill set, and instead, viewed him as an "aggressive seller." (PCMF, Ex. 3, 275:10-13; 277:4-16). Mr. Clancy's determination that Mr. Stevens had the skill set he was looking for and Mr. Capozzoli did not, given his long history of working with both Mr. Stevens and Mr. Capozzoli, is not evidence of age-based animus, but reflects a business judgment by Mr. Clancy. *See Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1220 (3d Cir. 1988) (Businesses "have the right to make business judgments on employee status, particularly when the decision involves subjective factors[.]").

Plaintiffs further claim that the creative roles in TM Studios were involved in sales before the reorganization of TM Studio, and that their involvement in sales before the reorganization shows that Defendants' reasons for eliminating the Affiliate Seller positions are pretexual. (Pls. Br., p. 16) But, having creative roles involved in the sales process differs from having those creative roles *lead* the sales process, which happened after the reorganization of TM Studios.

As Mr. Stevens testified, in his role as Vice President of Affiliate Sales, he only made sales "from a standpoint [of creative employees] bringing the prospect to [him] to close the deal" and "putting together the contract information." (PCMF, Ex. 5, 40:7-10; 75:1-17). He described it as a "hybrid model" that had not previously existed and stated that things were much different than when he had previously worked for TM Studios as an Affiliate Seller. (PCMF, Ex. 5, 81:4-23). Plaintiffs lack first-hand knowledge of how TM Studios operated after their employment was terminated. Thus, any attempts to dispute Mr. Stevens characterizations of the new sales model are unavailing.

Finally, Plaintiffs claim that Mr. Stevens replaced them. In support of their argument, Plaintiffs cite to cases where courts denied summary judgment because the employer told the employee his position was eliminated but replaced him with someone in the same exact position.

*See, e.g. Waldron SL Industries, Inc.*, 56 F.3d 491, 493 (1995) (denying summary judgment where employer set up sham reorganization, belied by the documentation, and placed younger employee in same exact role); *Spagnoli v. Brown & Brown Metro., Inc.*, No. 06-414, 2007 WL 2362602 (D.N.J. Aug. 15, 2007) [3] (denying summary judgment where employee was only person terminated in sham restructuring shortly after taking leave and emails contradicted reasons for termination); *Pilcher v. Continental Electronics Corp.*, 121 F.3d 703 (5th Cir. 1997) (characterizing the situation as a "one-on-one replacement" and differentiating situations where several jobs were conflated into one, which would not be evidence of discrimination).

Mr. Stevens was not hired for an Affiliate Seller position, and no one holds an Affiliate Seller role within TM Studios. Mr. Stevens was hired to be the Vice President of Affiliate Sales, which was "much different" than the role of Affiliate Seller – a role he held for over 15 years with Westwood One. (PCMF, Ex. 5, 76:25-77:8; 81:18-82:3). Mr. Stevens specifically testified "there was a lot more managerial aspect[s]" to his new role than his previous role and that he spent a much greater time on administrative tasks than he previously did. (PCMF, Ex. 5, 76:25-77:8; 81:18-82:3).

An employee is not replaced when "another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees performing related work." *Michniewicz v. Metasource, LLC*, 756 F. Supp. 2d 657, 666 (E.D. Pa. 2010); *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Similarly, here, Plaintiffs' sales duties were redistributed between both existing creative personnel (such as Mr. Clancy) and Mr. Stevens, who was responsible, not just for making sales, but managing the entire affiliate sales

---

[3] Plaintiffs completely mischaracterize *Spagnoli*. The denial of summary judgment was not based on the fact that the plaintiff was replaced.

process. (DUMF 119-120).[4]

Finally, Mr. Clancy is 58 years old; Mr. Stirland is 68. (PCMF 151, Ex. 4, 25:4-6). They are both members of the protected class, and "a plaintiff's ability to raise an inference of discrimination is hampered when the decision maker is a member of the plaintiff's protected class." *Elwell v. PPL, Inc.*, 47 Fed. App'x 183, 189 (3d Cir. 2002). At bottom, Plaintiffs have not pointed to any evidence that shows that Defendants' legitimate, non-discriminatory reason for eliminating their positions – the reorganization of TM Studios which coincided with the decision to shut down the HitDisc division – is pretextual and that Mr. Clancy and Mr. Stirland's true motive was age discrimination.

### E. Mr. Napier's Disagreement With The Thoroughness Of The Investigation Is Not Evidence Of Pretext.

Plaintiffs assert that Defendants did not investigate Mr. Napier's claims of discrimination, which is also evidence of pretext. (Pls.' Br., p. 20). However, Plaintiffs'[5] disagreement with the thoroughness of the investigation is immaterial.

Mr. Napier complained to Melissa Garza and Todd McCarty about being put on a performance improvement plan, stating "my only conclusion is that this is age discrimination." (DSUMF 97, 100-101). Ms. Garza was already aware of the issues with Mr. Napier's performance and had discussed Mr. Napier's performance with Mr. Clancy. (DSUMF 96). Beyond Mr. Napier's disagreement with the performance improvement plan and his own assessment of his performance, he put forth no further facts or incidents supporting his claim. (DSUMF 101-02).

After Ms. Garza received the complaint, she spoke with human resources to determine if

---

[4] Even if Mr. Stevens did replace Plaintiffs, which he did not, the Third Circuit has held that replacement with a younger employee is insufficient to establish pretext. *Farzan v. Vanguard Grp., Inc.*, 582 F. App'x 105, 108-09 (3d Cir. 2014).
[5] It is unclear how an investigation into Mr. Napier's complaint of discrimination could bear on whether Mr. Capozzoli's termination was discriminatory or retaliatory.

there had been any prior complaints by Mr. Napier and spoke to Mr. Clancy and Mr. Stirland about Mr. Napier's claims. (PCMF Ex. 6, 44:24-45:11). Any further investigation into Mr. Napier's claims would have been unnecessary as Ms. Garza already knew the relevant facts.

The cases cited by Plaintiffs (all from outside this circuit) relate to situations where an employee was terminated for misconduct, yet not given the opportunity to defend himself. (Pl. Br., 21-22). Mr. Napier's performance played no role in his termination, Ms. Garza was not a decision-maker regarding his termination, and these cases do not support the proposition that Mr. Napier's dissatisfaction with Defendants' response to his complaint, made almost a year before his termination, is evidence of pretext.

### F. Capozzoli Did Not Engage In Protected Activity.

Plaintiffs assert that Mr. Capozzoli's decision not to participate in a call with Mr. Napier regarding strategies to improve his sales performance was protected activity because Mr. Capozzoli was acting under a reasonable belief that Defendants were engaging in age discrimination. (Pls.' Br., p. 27). This argument fails because Mr. Capozzoli never informed Defendants of his belief or took any actions that would have allowed Defendants to conclude he opposed a discriminatory practice.

"To qualify as protected activity, a plaintiff's opposition to an illegal employment practice must raise the issue of discrimination and identify the alleged discriminatory practice." *Curay-Cramer v. Uruline Acad.*, 450 F.3d 130, 135 (3d Cir. 2005). In other words, "it must be possible to discern from the context of the statement that the employee opposes an unlawful employment practice." *Id.*; *Broad v. Home Depot U.S.A., Inc.*, No. 14-771, 2016 WL 3566959, at *15 (D.N.J. June 30, 2016) ("To constitute protected conduct under NJLAD, Plaintiff's comments must express opposition to discrimination.")

*Crawford v. Metro Gov't of Nashville*, 555 U.S. 217, 283 (2009), relied on by Plaintiffs,

10

does not protect employees "who do not communicate their views to their employers through purposive conduct." (Alito, J., concurring). Even the Equal Employment Opportunity Commission guidance cited by Plaintiffs makes clear that to engage in protected activity by refusing to obey an order, the employee needs to identify that his reason for refusal is a belief that the opposed practice is discriminatory. *See, e.g.*, *EEOC v. HBE Corp.*, 135 F.3d 543, 549 (8th Cir. 1998) (holding that manager refusing to terminate employee was protected activity because manager informed employer he believed the decision was discriminatory).

Mr. Capozzoli did not communicate his belief that Westwood One was engaging in discrimination to Defendants. He declined to participate in a performance conversation with Mr. Clancy and Mr. Napier, stating that he "didn't want to be involved if his job was not in jeopardy[,]" but did not cite discrimination for his reason for declining. (DSUMF 93-94). He never tied his decision to his belief that the performance discussion was discriminatory. *Cf. Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (employee did not engage in protected activity where he did "not explicitly or implicitly allege that age was the reason for the alleged unfairness.") As a result, he did not engage in protected activity.

      **G.**      **Even If Mr. Capozzoli Did Engage In Protected Activity By Complaining to Ms. Westover and Mr. Green, There Is No Evidence Any Decisionmakers Were Aware Of The Protected Activity.**

Plaintiff also argue that Mr. Capozzoli engaged in protected activity when he told Debbie Westover and Dennis Green he "thought they were messing with [Mr. Napier] because of his age." (Pls.' Br., p. 23).[6] Even if this were protected activity, it still would not establish a retaliation claim because there is no evidence that Ms. Westover or Mr. Green communicated this complaint

---

[6] Mr. Capozzoli testified that his decision not to participate in the call regarding Mr. Napier's performance was the sole reason he was retaliated against. (DSUMF 132). As a result, he should not be able to now argue that his comments to Ms. Westover led Defendants to terminate his employment.

to anyone else at Westwood One, including Mr. Clancy and Mr. Stirland.

In order to establish a retaliation claim, the decisionmakers involved in the materially adverse employment action "must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002); *Abramson v. William Patterson College*, 260 F.3d 265, 286 n.17 (3d Cir. 2001) (under NJLAD "an employee must show that he or she engaged in protected activity *known to the employer*") Plaintiffs have identified no evidence that Ms. Westover or Mr. Green communicated Capozzoli's alleged statements to anyone else at Westwood One. And, as a result, Mr. Capozzoli cannot establish a causal connection between his alleged protected activity and his termination.

### H. There Is No Evidence Of Antagonism.

Because Plaintiffs recognize that the time period between Napier's protected conduct and his termination cannot establish a causal connection, they attempt there was a pattern of antagonism following Napier's protected activity. (Pls.' Br., 29).

Neither Mr. Capozzoli's vague assertion that Mr. Clancy "kind of went silent" after Mr. Capozzoli declined to participate in the call with Mr. Napier[7] nor that Mr. Capozzoli and Mr. Napier had to report their sales calls rise to the level required to establish antagonism. *Cf. Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993) (holding that there was a "pattern of antagonism" where plaintiff was subject to a "constant barrage of written and verbal warnings"); *Bartos v. MHM Corr. Servs.*, 454 Fed. App'x 74, 79 (3d Cir. 2011) (finding no pattern of antagonism where employee was not subject to "consistent or continuous" disciplinary actions); *Gaston v. U.S. Postal Service*, No. 05-CV-5286, 2008 WL 2682850, at *7 (D.N.J. July 2, 2008) (noting that "[t]ypical

---

[7] As explained in Section I.F, *infra*, Mr. Capozzoli's decision not to participate in the call was not protected activity so Mr. Clancy's reaction to that decision could not be viewed as evidence of retaliatory intent or antagonism. Further, Mr. Capozzoli testified that after this call, "everything was good." (DSUMF 133).

examples of such antagonism include insults or threats.").

Further, Defendants' continued implementation of Mr. Napier's performance improvement plan is not evidence of antagonism. The performance improvement plan, based on Mr. Napier's failure to meet his EVO sales goals, was in place *before* Mr. Napier allegedly engaged in protected activity. Indeed, it prompted Mr. Napier's complaint. (DSUMF 97, 100). That Defendants did not revoke the performance improvement plan, which Mr. Napier passed, immediately after his complaint is not evidence of antagonism. *See Hooker v. Novo Nordisk, Inc.*, No. 16-4562, 2020 WL 526165, at * 17 (D.N.J. Jan. 31, 2020), *aff'd*, 20-1426 (3d Cir. 2021) (noting that "it is a high hurdle for plaintiff to show retaliatory animus [based on being placed on a performance improvement plan] when he . . . received significant negative feedback before" engaging in protected activity).

Without a causal connection between their alleged protected activity and their termination, Plaintiffs cannot set forth a retaliation claim.

### III. CONCLUSION

Plaintiffs' claims against Defendants fail as a matter of law. They cannot establish a *prima facie* case of discrimination or retaliation. Their termination was part of a larger reduction in force within the TM Studios division. Plaintiffs have not put forth evidence to show that the reduction in force was actually a cover for age discrimination or retaliation. Accordingly, Defendants respectfully request this Court grant their Motion for Summary Judgment and dismiss Plaintiffs' Complaint, with prejudice, in its entirety.

|  |  |
|---|---|
| | */s/ Paul C. Lantis* |
| | Paul C. Lantis (NJ # 017902010) |
| | plantis@littler.com |
| | Kayleen Egan (NJ # 170842016) |
| | kaegan@littler.com |
| | **LITTLER MENDELSON, P.C.** |
| | 1601 Cherry Street, Suite 1400 |
| | Philadelphia, PA 19102.1321 |
| | 267-402-3000 |
| | 267-402-3131 (fax) |
| | |
| | *Attorney for Defendants,* |
| | *Westwood One, LLC, William G. Clancy, and* |
| Dated: November 1, 2021 | *Kirk Stirland* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2021, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

/s/ *Paul C. Lantis*
Paul C. Lantis